UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MENDY BROTHERS, LLC, and** **EDWARD B. MENDY**   Plaintiffs | **CIVIL ACTION** |
| -versus- **BANK OF NEW YORK MELLON,** **DOES 1 through 10,** | **CASE NO.: 2016-cv-6406** |
| **ABC INSURANCE COMPANY,** **XYZ INSURANCE COMPANY** | **SECTION L, MAG. 5** |
| **Defendants** | **JUDGE:  ELDON E. FALLON** |
| | **MAGISTRATE: MICHAEL B. NORTH** |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NOW INTO COURT,** comes Edward B. Mendy, a *pro se* Plaintiff herein, (hereinafter also referred to as "Mendy"), representing himself only and not Mendy Brothers, LLC (hereinafter also referred to as "Mendy Brothers"), and in seeking partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully aver as follows:

**I.    PRELIMINARY STATEMENT**

The current controversy arose when Plaintiff Edward B. Mendy filed a complaint against Defendant Bank of New York Mellon (Rec. Doc. 1). The Plaintiff alleged that the Defendant Bank of New York Mellon breached their contract when it failed to sell it the property located at 7833 Primrose Street, New Orleans, LA.  (Rec. Doc. 1).

Plaintiffs claim that Plaintiffs and Defendant Bank of New York Mellon (BONYM) entered into a contract on or about April 12, 2016 when they accepted or on April 14,

2014 when BONYM received Plaintiffs' acceptance of BONYM's April 11, 2016 Counteroffer.  Plaintiffs had made an offer to BONYM to buy the Primrose Property for $93,000.00.  BONYM counter offered the said Offer with a price of $95,000.00 (the Counteroffer).  On April 12, 2016, Plaintiffs instructed their real estate agent, Dina Dufauchard, to accept the Counteroffer and she did on April 12, 2016, which acceptance BONYM claims was only received by BONYM on April 14, 2016.

Despite acknowledging receiving the acceptance on April 14, 2016, BONYM did not reject it until April 20, 2016.  The date of the rejection of Plaintiffs' acceptance coincided with the date BONYM entered into with a third party unknown to Plaintiff and took the Primrose Property off the market as being "Under Contract."

BONYM Mellon has refused to sell the Primrose Property to Plaintiffs and now claims there is no contract between it and Plaintiffs as its Counteroffer to Plaintiffs was revoked by its request for "Highest and best offer."

BONYM proceeded with the sale of the Primrose Property to a third party and was only stopped from carrying out its intention to sell the Primrose Property by the pending *Lis Pendens* filed by Plaintiffs on the Primrose Property.

## II.  FACTS MATERIAL TO SUMMARY JUDGMENT

The property which is the cause of this litigation, the property located at 7833 Primrose Drive, New Orleans, LA 70126 (the "Primrose Property") became the property of Bank of New York Mellon (BONYM), as trustee on behalf of the holders of the Alternative Loan Trust 2007-OA10, Mortgage Pass-Through Certificates Series 2007-OA10 on or about June 25, 2015. BONYM's Counterclaim, ¶5, (Record No. 19, p.17).   On or about July 20, 2015, BONYM listed the Primrose Property for sale. BONYM's Counterclaim, ¶6.  On March 30, 2016, BONYM received an offer to purchase the

Primrose Property from or on behalf of Mendy Brothers, LLC and Edward B. Mendy through Plaintiffs' agent, Dina Dufauchard (BONYM's Counterclaim, ¶7), who was duly authorized to act on behalf of the Plaintiffs in writing (Exhibit 1).

Plaintiffs submitted their initial offer on the Primrose Property using the standard form for the sale and purchase of residential real estate proscribed by the Louisiana Real Estate Commission. Exhibit 2.  BONYM responded to Plaintiffs' original offer with a counteroffer using Exceleras and required that all correspondence us it. Exhibit 4.  Between April 1, 2016 and April 14, 2016, BONYM, through its realtor, Kathy Hebert, and Plaintiffs, through their realtor, Dina Dufauchard, exchanged offers concerning the purchase of the Primrose Property. BONYM's Counterclaim, ¶8.

On or about April 7, 2016, Plaintiffs submitted an offer to BONYM for the purchase of the Primrose Property (the Offer).

On or about April 11, 2016 at 5:08 pm CST, BONYM made a counteroffer to Plaintiffs (the Counteroffer), in which it offered to sell the Primrose Property for $95,000.00. *See* Exhibit 8; BONYM's Counterclaim, ¶9.  On the same date, BONYM submitted a request for "Highest and best offer" from the Plaintiffs (the "Request for Highest and Best Offer") *See* Exhibit 9.  The Highest and Best Offer request did not reference the Counteroffer or state that the Counteroffer was revoked.  *Id.*  The Request for Highest and Best Offer request sent on the same day and a few hours after the Counteroffer, on April 11, 2016 at 9:35 pm CST (four hours, twenty seven minutes and four seconds after the Counteroffer), by BONYM.  *Id.*

BONYM claims that the Highest and Best Offer request also sent by BONYM, through its realtor and the Multiple Listing Service ("MLS"), that it notified all interested purchasers that it had received multiple offers for the purchase of the

Primrose Property, and requested that each interested party submit its "highest and best offer" to BONYM on or before 1:00 pm CST on April 13, 2016. BONYM further instructed that the Primrose Property was to be sold "as is." BONYM's Counterclaim, ¶10.

The Plaintiffs' Agent submitted an acceptance at the direction of Mendy on or about April 12, 2016, and earlier than 7:55 EST (the Acceptance). *See* Exhibit 11.

On April 14, 2016, BONYM received Plaintiffs' Acceptance and response to BONYM's call for Highest and Best offer. BONYM's Counterclaim, ¶16.

On or about April 20, 2016, BONYM informed Plaintiffs that their acceptance of the Counteroffer (the Acceptance) was rejected. Exhibit 12.

The Offer, Counteroffer and Acceptance were communicated using Exceleras (www.exceleras.com), the offer management system proscribed by BONYM.

All of the parties' negotiation related to the Primrose Property (offers, counteroffers and acceptance) was done electronically and in writing, and was communicated via the very electronic offer management system and portal that BONYM dictated--https://www.exceleras.com/.   Exceleras by it own literature is an "offer submission tool allows a buyer's agent to submit an offer directly to the bank or servicer. As a result of truly electronically connecting Buyers and Sellers, the seller has visibility to all offer traffic, ideally resulting in more offers, less fraud, and shortened market time." *See Specifically* https://www.exceleras.com/Home/OfferManagement.   Each user (party or party representative) must be registered and duly authorized before he or she can use Exceleras.

BONYM has refused to sell the property to Plaintiffs.   BONYM was moving forward with selling the property to another party and would have sold the property to

4

said party but for its inability to do so as a result of the pending *Lis Pendens* filed by Plaintiffs. BONYM's Counterclaim, ¶12-18.

III.   **STATEMENT OF THE LAW**

a. **Summary Judgment Standard**

Summary Judgment under Federal Rule of Civil Procedure 56 is appropriate as to "each claim or defense—or the part of each claim or defense[.]" Fed. R. Civ. P. 56(A). "Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact" and the movant is entitled to judgment as a matter of law. *Kennedy Marr Offshore Singapore Pte Ltd. v. Techcrane Intern. Inc.,* 2013 WL 3283343, *3 (E.D. La. 6/27/2013) (granting motion for partial summary judgment to plaintiff on defendant's affirmative defense); see also Fed. R. Civ. P. 56.

Per Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wilson v. Tregre,* 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). A dispute is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ray v. United Parcel Serv.,* 587 F. App'x 182, 186 (5th Cir. 2014). A court construes all facts and evidence in the light most favorable to the nonmovant. *Haverda v. Hays Cnty.,* 723 F.3d 586, 591 (5th Cir. 2013). In response to another's motion, the nonmovant cannot rely on "[c]onclusional allegation and details, speculation, . . .

unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citations omitted). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

"[w]hen both parties have submitted evidence of contradictory facts," a court is bound to "draw all reasonable inferences in favor of the nonmoving party" *Boudreaux v.*

_Swift Transp. Co., Inc.,_ 402 F.3d 536, 540 (5th Cir. 2005); _Reeves v. Sanderson Plumping Prods.,_ 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105, 122 (2000); _see also Anderson,_ 477 U.S. at 248 (emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinnings of [factual disputes]"). It thus cannot "make credibility determinations or weigh the evidence." _Reeves,_ 530 U.S. at 150. This command—that a district court "eschew making credibility determination or weighing the evidence," _Calhoun v. Johnson,_ 632 F.3d 1259, 1261 (D.C. Cir. 2011) (citing _Lathram v. Snow,_ 336 F.3d 1085, 1088 (D.C. Cir. 2003)); _accord, e.g., Flythe v. Dist. of Columbia,_ 791 F.3d 13, 22 (D.C. Cir. 2015)—applies so long as the record retains patches of reasonable ambiguity that have not been artificially manufactured. _See, e.g., Tolan v. Cotton,_ 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895, 901 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

So constrained, by Rule 56, this Court must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 9A WRIGHT, _supra,_ § 2529. To wit, although this Court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." _Reeves,_ 530 U.S. at 151, _cited in Havera,_ 723 F.3d at 591. Within the narrow domain of Rule 56, summary judgment is hence inappropriate (1) if there are legitimate, not superficial or frivolous, factual disputes that may affect the outcome of the case under the applicable substantive law, _see Anderson,_ 477 U.S. at 248, and (2) so long as the nonmovant does not exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations,"

"unsubstantiated assertions," or "a scintilla of evidence," _Little v. Liquid Air Corp.,_ 37 F.3d 1069, 1075 (5th Cir. 1994). Significantly, under controlling state law, "[w]hen a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment." _Young v. Tolintino,_ 26 So. 3d 835, 838; _see also, e.g., Sims v. Mulhearn Funeral Home, Inc.,_ 2007-0054 (La. 05/22/07), 956 So. 2d 583, 590.

### b.  General Principles of Louisiana Contract Law

Under Louisiana law, "a contract is defined as an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE art. 1906; _see also Elder v. Elder & Elder Enterprises, Ltd.,_ 06-0703, p. 3 (La. App. 4th Cir. 01/11/07), 948 So. 2d 348, 351. More precisely, four elements are necessary for the confection of a valid contract: (1) the parties must have the capacity to contract; (2) the parties must freely give their mutual consent to the contract; (3) the parties must have a cause or reason for obligating themselves; and (4) the contract must have a lawful purpose. _Ingraffia v. NME Hospitals, Inc.,_ 943 F.2d 561, 565 (5th Cir. 1991). Per Article 1927, "[a] contract is formed by the consent of the parties established through offer and acceptance." LA. CIV. CODE art. 1927; _Peironnet v. Matador Res. Co.,_ 2012-2292 (La. 06/28/13); 144 So. 3d 791, 806.

Crucially, neither an offer nor acceptance must take a particular form to be effective. Rather, "[u]nless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent," and "[u]nless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made." LA. CIV. CODE art.

1927; _Read v. Willwoods Cmty.,_ 2014-1475 (La. 03/14/15); 165 So. 3d 883, 887. But "an acceptance not in accordance with the terms of the offer is deemed to be a counteroffer." LA. CIV. CODE art. 1943; _Brandner v. Staf-Rath, L.L.C.,_ 10-778 (La. App. 5 Cir. 04/26/11); 64 So. 3d 812, 816. Once created, a contract may only be revoked by mutual consent of the parties, LA. CIV. CODE art. 1983; _Guarantee Sys. Constr. & Restoration, Inc.,_ 728 So. 2d at 403, and its interpretation requires "the determination of the common intent of the parties," LA. CIV. CODE art. 2045, as constricted by the plain document's four corners.

The Civil Code codifies two types of contracts. By definition, "[a]n offer that specifies a period of time for acceptance is irrevocable during that time," and "[w]hen the offeror manifests an intent to give the offeree a delay within which to accept, without specifying a time, the offer is irrevocable for a reasonable time." LA. CIV. CODE arts. 1928; _Ritter v. Exxon Mobile Corp.,_ 2008 1404 (LA. App. 4 Cir. 09/09/09); 20 So. 3d 540, 546; _Myers v. Burger King Corp.,_ 618 So. 2d 1123, 1126 (La. Ct. App. 1993). Defined in the negative, all other proposals that do not fit this definition are revocable "before . . . [being] accepted." LA. CIV. CODE arts. 1930; _Aloisio v. Christina,_ 2013 0676 (La. App. 1 Cir. 02/03/14); 146 So. 3d 564, 566.

The Civil Code provides different rules for the acceptance of revocable and irrevocable offers. "An acceptance of an irrevocable offer is effective when _received_ by the offeror," while acceptance of a revocable offer, "made in a manner and by a medium suggested by the offer or in a reasonable manner and by a reasonable medium, is effective when _transmitted_ by the offeree." LA. CIV. CODE arts. 1934-35 (emphases added); _Kent v. Hogan,_ 2003-2424 (La. App. 1 Cir. 10/29/04), 897 So. 2d 68, 71. A revocation of a revocable offer is effective when received by the offeree, so long as

receipt occurred prior to acceptance. LA. CIV. CODE art. 1937; *Aloisio,* 146 So. 3d at 566. The next article contains the relevant definition of these Articles' chosen verb, "received": "A written revocation, rejection, or acceptance is received when it comes into the possession of the addressee or of a person authorized by him to receive it, or when it is deposited in a place the addressee has indicated as the place for this or similar communications to be deposited for him." LA. CIV. CODE art. 1938; *Ambrose v. M & M Dodge, Inc.,* 509 So. 2d 444, 447 (La. Ct. App. 1987).

Even if all the foregoing hurdles have been crossed, "[c]onsent may be vitiated by error, fraud, or duress." LA. CIV. CODE art. 1948; *In re K.L.A.,* 2015-1410 (La. 6/30/2015); 172 So. 3d 601, 606 n.7.

### IV.   APPLICATION OF THE LAW

#### a. Louisiana Breach of Contract Law

Under Louisiana law in order to successfully establish a breach of contract a party must prove "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot,* 68 So. 3d 1099, 1108-1109 (La.App. 4 Cir. 2011). Defendant BONYM's primary defense appears to be that Plaintiffs cannot satisfy the first element of a breach of contract claim because it did not contractually undertake any of the obligations that the Plaintiffs allege the Defendant failed to perform. The Plaintiffs claim that the Defendant BONYM was obligated to sell them the Primrose Property and Defendant has breach the Contract by refusing to do so.   Defendant maintains there is no contract between it and Plaintiffs as its Request for Best and Highest Offer revoked the Counteroffer before Plaintiffs accepted it.

#### b. Offer, Acceptance and Rejection-Four Corners Analysis

In the instant matter, the court must focus on two related questions central to establishing the formation and enforceability of the Contract—whether Plaintiffs consented to the Counteroffer and, if so, whether their consent predated Defendant's attempted revocation.  There are two possible scenarios in this case, (1) Counteroffer, No Attempted Revocation, Acceptance and Attempted Revocation, or (2) Counteroffer, Attempted Revocation, and Acceptance.  Under either scenario, the court will find that the Plaintiffs are entitled to smeary judgment as a matter of law.

      **i.**     <u>Counteroffer, No Attempted Revocation, Acceptance and Attempted Revocation</u>

This scenario is the simplest and provides a plain answer: if the Request for Highest and Best Offer was not intended as a revocation and there was no revocation before Defendant's April 20, 2016 Rejection of Plaintiff's Acceptance of the Counteroffer, the Rejection would be an attempted rescission, which by the time it was received was too late.  If there was not intervening revocation between the April 11, 2016 Counteroffer (Exhibit 8) and Plaintiff's acceptance of it (Exhibit 11), the Contract, by the time the Rejection was received, would have become a fully binding contract voidable only with the Parties' "mutual consent," <u>*W. N. Bergeron & Sons v. Caldwell Sugar Co-op, Inc.,*</u> 340 So. 2d 1054, 1056 (La. Ct. App. 1976).  Once consent has been communicated "orally" or "by action or inaction . . . clearly indicative of consent," a contract is born, and any obligations enumerated therein gain the force and effect of law. LA. CIV. CODE art. 1927; <u>*Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P.,*</u> 689 F.3d 380, 388 (5th Cir. 2012). And once a *written* acceptance "comes into possession of the addressee or of a person authorized by him to receive it" or "deposited in a place the addressee has indicated as the place for this . . . communication to be

deposited," the same bond has formed. LA. CIV. CODE art. 1938; *see also Hanger One MLU, Inc. v. Unopened Succession of Rogers,* 43,120 (La. App. 2 Cir. 04/16/08); 981 So. 2d 175, 180. These principles should guide this Court that a contract was formed—and ultimately leave no room for complication. *See ScenicLand Constr. Co., L.L.C. v. St. Francis Med Ctr., Inc.,* 41,147 (La. App. 2 Cir. 07/26/06); 936 So.2d 251, 251 ("When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law.").

As a matter of indisputable fact, evidenced by the clearest contractual context, Defendant sent Plaintiffs a counteroffer on April 11, 2016 (Exhibit 8), Plaintiffs accepted the Counteroffer on or about April 12, 2016 (Exhibit 11), Defendants received the acceptance by April 14, 2016 by it admission (BONYM's Counterclaim, ¶16), and only tried to reject the contract on April 20, 2016, well after the contract has formed (Exhibit 12).

Equally incontrovertibly, Mendy explicitly indicated a will execute a consent to the Counteroffer immediately even before he instructed Dina Dufauchard to accept the Counteroffer on April 11, 2016, (Exhibit 11), an intention to accept, a promise "indicative . . . clearly indicative of consent," LA. CIV. CODE art. 1927. Regardless, in the language of Article 1937, the Acceptance was finally "deposited in a place"—Exceleras,—"the addressee [BONYM] ha[d] indicated as the place for this . . . communication to be deposited" on April 12, 2016. (Doc. 11-1 at 2). At the latest, the Acceptance of the Counteroffer came into BONYM's possession sometime on April 14, 2016.  Based on these unquestionable facts, in accordance with Louisiana's contract regime, *see supra* Part III.A.2, Plaintiffs' consent was effected by their acceptance of the Counteroffer made by BONYM on April 11, 2016, via the promise to accept the Counteroffer and/or by

the actual Acceptance of the Counteroffer, Communicated to BONYM using Exceleras on April 12, 2016. By virtue of any of these distinct actions, Plaintiffs transmitted Plaintiffs' consent to the Counteroffer on April 12, 2016 and the consent was received by BONYM no later that April 14, 2016.  Thus, a contract formed.  *See e.g., Vidrine v. J & J Exterminating Co.,* 09-285 (La. App. 3 Cir. 10/07/09); 20 So. 3d 585, 590 (finding no error in trial court's conclusion that a party's signature on a form served as "demonstration of . . . consent" for purposes of Article 1927); *Boudreaux v. Vankerkhove,* 2007 2555 (La. App. 1 Cir 08/11/08); 993 So. 2d 725, 731 ("The signatures of the parties in the written agreement . . . is evidence of their consent to the contract. . . ."); *Spiers v. Seal,* 426 So. 2d 631, 634 (La. App. 1st Cir. 1982) (finding acceptance to have been given on the same date that two parties signed the pertinent agreement).  In the end, when the law and facts are distilled (unless the court were to find that the Counteroffer was revoked by an intervening act such a s revocation by the Request for Highest and Best Offer), the Plaintiffs' consent to the Counteroffer was duly provided, and a contract was formed upon receipt of same by BONYM.

**ii.**    Counteroffer, Attempted Revocation and Acceptance

In spite of the foregoing analysis, which clearly show the formation of a contract by the parties, it is expected that BONYM will argue that it revoked its consent to sell the Primrose Property to Plaintiffs with its Request for Highest and Best Offer, which revocation transmitted to Plaintiffs on the same date as the Counteroffer, on April 11, 2016, and before the acceptance of the Counteroffer by Plaintiffs.

Admittedly, BONYM did communicate a request to Plaintiffs and presumably to others that it would like to receive their "Highest and best offer." (Exhibit 9).  Even if BONYM's intent was to have the Request Highest and Best Offer serve as an attempt to

revoke the Counteroffer on the night of that very same day that the counteroffer was, the Counteroffer, the purported revocation would have no effect for two reasons (1) the revocation is defective, and (2) the revocation has no effect since the Counteroffer as one dealing with real estate had to be open to Plaintiffs for a reasonable time.

### *The Revocation was Defective*

An offer is a unilateral declaration of will that a person-the offeror-addresses to another-the offeree-whereby the former proposes to the latter the conclusion of a contract. *See <u>Laroussini v. Werlein,</u>* 52 La. Ann. 424, 27 So. 89 (1899).

To constitute a true offer, a declaration of will must be sufficiently precise and complete so that the intended contract can be concluded by the offeree's expression of his own assent, thereby giving rise to that "mutual consent" of the parties which, in practical terms, is indistinguishable from the contract itself. Thus, if the intended contract is a sale, the offer must be sufficiently precise concerning the thing to be sold and the price. La. Civ. Code art. 2439.

Similarly, to constitute a revocation of an offer, the declaration of the intention to revoke one's consent (will) must be sufficiently precise and complete so that withdrawal of one's consent can be clearly concluded by the revokee's expression of his own revocation.  In the instant matter, the purported revocation simply stated that ""Highest and best offer" has been requested by the seller."

While BONYM asked for Plaintiffs "Highest and best offer" at no time was an intention to revoke the pending counter offer ever stated.  Even if an intention to revoke was stated by BONYM's act of requesting plaintiffs' "Highest and best offer" as BONYM would now wants us to believe, the revocation would still have no effect.

**The Timing of the Revocation was not Reasonable**

By default, an offer is irrevocable for a reasonable amount of time under Louisiana law. *La. C.C. art. 1928*. An offer that specifies a period of time for acceptance is irrevocable during that  time. Also, if no time is specified, if the offeror manifests an intent to give the offeree a  delay within which to accept, the offer is irrevocable for a reasonable time. *La. C.C. art. 1928*.

An irrevocable offer expires if not accepted within the time prescribed. *La. C.C. art. 1929*. For example if BONYM had had submitted its April 11, 2016 counteroffer and wrote that the offer is irrevocable only until April 11, 2016, at 9:35:03.  If Plaintiffs do not accept the offer on or before that time, then the offer would have expired and could no longer be accepted.

An offer not irrevocable under Civil Code Article 1928 may be revoked before it is accepted. *La. C.C. art. 1930*.  A revocable offer expires if not accepted within a reasonable time. *La. C.C. art. 1931*.  The contract is created when the offer is accepted and that fact is communicated and received. A simple "yes" is sufficient consent. In the case of real property, evidence of acceptance must be in writing.   Acceptance of an irrevocable offer is effective when received by the offeror. *La. C.C. art. 1934*. It is questionable whether or not presenting an accepted offer to a party's real estate agent is "received."  However, it is unquestionable that BONYM received the offer on April 14, 2016. A revocable offer (rare) is accepted once the acceptance is transmitted (e.g., mailed, sent by courier, etc.). *La. C.C. art. 1935*.

In the instant matter, BONYM had rendered their offer irrevocable by not specifying a time within which to accept and instead specifying that Plaintiffs could manage the offer through Exceleras, imputing a reasonable time within which to

respond.  Based on these facts—that the Counteroffer as received on "the same day" as the day the purported rescission was sent (indeed Highest and Best Offer Request or purported rescission of the Counteroffer was sent four hours, twenty seven minutes and four seconds later than the Counteroffer), and that the offer was irrevocable for reasonable time, not only because BONYM offered to have the Plaintiffs manage the Counteroffer through Exceleras but also by operation of law because the offer related to real estate—BONYM's purported revocation has no effect, if it indeed was intended to be revocation, and it was not.

Aside from the fact that Plaintiffs' consent had already been transmitted less than twenty-four fours from the counteroffer, BONYM acknowledged receiving the offer on April 14, 2016 and failed to act on it until April 20, 2016, presumably in hopes that it would receive offer higher that the accepted Counteroffer.

If BONYM had intended its Counteroffer to accepted immediately or to be open for a day (less than four and half hours), the Counteroffer should have said so.   While it is true that the Counteroffer did not specify a time within which it must be accepted, the Counteroffer in this matter related to real estate.  Thus, reasonable time to consider it is allowed to consider it. "[A]n offer that specifies a period of time for acceptance is irrevocable during that time," LA. CIV. CODE art. 1928.   Even assuming that the counteroffer was revocable, acceptance of a revocable offer is "effective when transmitted by the offeree," LA. CIV. CODE art. 1935. By April 12, 2016, less than twenty-four hours after the counteroffer was made, Plaintiffs had already accepted the counteroffer by transmitting their acceptance using Exceleras, the method of offer management and communication dictated by BONYM.

**V.**     <u>**CONCLUSION**</u>

For all of the forgoing reasons, Plaintiffs are entitled to Summary Judgment as a matter of law.

Submitted:  April 11, 2017

Respectfully Submitted

/s/ Edward B. Mendy

EDWARD B. MENDY, *Pro Se*
1610 Robert E. Lee Boulevard
Apartment 105
New Orleans, LA 70122
973-650-9721

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MENDY BROTHERS, LLC, and** **EDWARD B. MENDY** <br>        **Plaintiffs** <br>                **-versus-** <br> **BANK OF NEW YORK MELLON,** **DOES 1 through 10,** **ABC INSURANCE COMPANY,** **XYZ INSURANCE COMPANY** <br><br>        **Defendants** | **CIVIL ACTION** <br><br> **CASE NO.: 2016-cv-6406** <br><br> **SECTION L, MAG. 5** <br><br> **JUDGE:  ELDON E. FALLON** <br><br> **MAGISTRATE: MICHAEL B. NORTH** |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### CERTIFICATE OF SERVICE

I CERTIFY that on this 11th day of April, 2017, I caused to be sent via the court's electronic delivery system and I emailed and mailed a true and correct copy of the foregoing pleading via electronic mail and/or first class U.S. mail, postage prepaid, to the following:

> **Jonathan Wilbourn, Esq.**
> **Mark R. Deethardt, Esq.**
> **601 Poydras Street, Suite 1200**
> **New Orleans, LA 70130**
> **jwilbourn@McGlinchey.com**
> **mdeethardt@McGlinchey.com**
>
> **J. DOUGLAS SUNSERI**
> **3000 18th Street**
> **Metairie, LA 70002**
> **jdsunseri@nslawla.com**

_Edward Mendy_
_____
**EDWARD B. MENDY**